U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 JUN 22 PM 1:21

CLERK
BY ____lw____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JAMES RIVER INSURANCE COMPANY, )
)
Plaintiff, )
)
v. )
)
INN-ONE HOME, LLC D/B/A OUR HOUSE ) Case No. 18-cv-00100
RESIDENTIAL CARE HOMES, PAULA )
PATORTI, LISA PATORTI, and JUNE F. )
KELLY, as Executor of the Estate of Marilyn )
F. Kelly, )
)
Defendants. )

## OPINION AND ORDER GRANTING JAMES RIVER'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(Doc. 41)

In this case, Plaintiff James River Insurance Company ("James River") seeks a declaratory judgment regarding its duty to defend and indemnify Inn-One Home, LLC ("Inn-One"), Paula Patorti, and Lisa Patorti, (together, "Defendants") in an underlying state court civil suit (the "Underlying Suit") based on the alleged neglect, assault, and mistreatment of the late Marilyn F. Kelly ("Ms. Kelly") at a residential care facility operated by Inn-One.

On August 22, 2019, James River moved for partial summary judgment pursuant to Fed. R. Civ. P. 56, seeking judgment as a matter of law regarding whether it has a duty to defend and indemnify Inn-One in the Underlying Suit under the commercial general liability ("CGL") coverage set forth in Policy Number 00076613-0 (the "Policy") and whether it must pay damages for the expense of Ms. Kelly's care while she resided at Inn-One's facility. (Doc. 41.) Defendants opposed the motion on September 23, 2019, and James River replied on October 7, 2019. The court heard oral argument on January 10, 2020, at which time it took the motion under advisement.

James River is represented by Gary M. Burt, Esq. Defendants Inn-One, Paula Patorti, and Lisa Patorti are represented by Joshua L. Simonds, Esq. Defendant June Kelly, as executor of the estate of Ms. Kelly (the "Estate"), is represented by Daniel L. Burchard, Esq.

## I.  The Undisputed Facts.

### A.  Facts Alleged in the Complaint in the Underlying Suit.

On December 11, 2017, Ms. Kelly's children[1] and the Estate filed a complaint in the Underlying Suit against Inn-One, Paula Patorti, Lisa Patorti, Patty A. Thornton, PA-C, and Timothy G. Cook, M.D. d/b/a Convenient Medical Care. The Estate alleges that in May 2015, Ms. Kelly was admitted to a residential care facility operated by Inn-One in Rutland, Vermont because she suffered from dementia. While at Inn-One's facility, Ms. Kelly allegedly received inadequate care and supervision, which the Estate contends contributed to her death on February 1, 2016. Ms. Kelly was allegedly medicated with the anti-psychotic drug Haldol throughout her stay at the facility without the consent of her legal guardian. In addition, Ms. Kelly was allegedly subject to a verbal and physical assault by Inn-One staff member Marissa Flagg. "At approximately 2[:00] a.m. on December 31, 2015,"

> 39.  [Ms. Kelly] . . . encountered Marissa Flagg, the only other caregiver on duty. Flagg repeatedly called [Ms. Kelly] a "fucking bitch" and a "cunt" and threatened to punch her. She then shoved [Ms. Kelly] from behind, causing her to fall to the floor and strike her hip – all of which was recorded by one of [the facility's] surveillance cameras. Flagg then stepped around [Ms. Kelly] and walked away.
>
> . . .
>
> 41.  [ . . . ] Flagg continued to yell and swear at [Ms. Kelly] while [Ms. Kelly] lay crying on the floor.
>
> 42.  At approximately 3[:00] a.m., three hours before her shift was supposed to end at 6[:00] a.m., Flagg gathered up her belongings and left [the facility].

---

[1] Ms. Kelly's children were later dismissed from the Underlying Suit in their individual capacities, leaving the Estate as the sole plaintiff.

(Doc. 41-3 at 6-7.)

The Underlying Suit asserts the following claims: violation of the Vermont Consumer Protection Act, 9 V.S.A. § 2453(a) (Count One); breach of contract (Count Two); negligent care (Count Three); negligent hiring, supervision, training, and retention of Ms. Flagg (Count Four); medical negligence by PA-C Thornton (Count Five); vicarious liability against Dr. Cook (Count Six); negligent supervision against Dr. Cook (Count Seven); and wrongful death (Count Eight). In connection with its Vermont Consumer Protection Act claim, the Estate seeks to recover $51,250 in fees paid to Inn-One "for the benefits it promised but failed to provide, three times that amount as exemplary damages, and their attorney's fees." (Doc. 41-1 at 5, ¶ 21.)

In the Underlying Suit, the Estate disclosed an opinion from Susan Wehry, M.D., who opines that Inn-One did not comply with the applicable standard of care in administering anti-psychotic medication to Ms. Kelly for the duration of her residence at Inn-One's facility. Dr. Wehry also opines that Ms. Flagg's assault of Ms. Kelly violated Inn-One's obligation under state licensing regulations to protect residents from "mental, verbal, or physical abuse, neglect, or exploitation." *See id.* at 7, ¶ 24 (quoting Vermont Residential Care Home Licensing Regulations § 6.12).

### B. The Policy's Coverage and Exclusions.

James River issued the Policy with effective dates of March 28, 2017 through March 28, 2018, providing CGL and professional liability insurance coverage to Inn-One for the period from March 28, 2017 through March 27, 2018.

The Policy's CGL coverage is a claims-made policy that applies to claims made against Inn-One during the policy period and covers damages for "'bodily injury' . . . to which this insurance applies[,]" (Doc. 41-1 at 2, ¶ 7), subject to the following exclusion:

> [T]his insurance does not apply to "bodily injury" . . . arising out of:
>
> 1. The rendering or failure to render:
>
> a. Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or the related furnishing of food or beverages;

3

> b. Any health or therapeutic service, treatment, advice or instruction; or
>
> . . .
>
> 2. The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances[.]

(Doc. 1-1 at 63) (the "Healthcare Providers Exclusion").

The Policy's professional liability coverage is also a claims-made policy that applies only to claims made against Inn-One during the policy period and any extended reporting period. It provides that James River will pay "those sums the insured becomes legally obligated to pay as 'damages' because of 'professional services' rendered or that should have been rendered to which this insurance applies." *Id.* at 28. "Professional services" are defined as "professional health care services[.]" *Id.* at 33.

The Policy's "Combined Policy Exclusions" specify that, for both the CGL and professional liability coverage, "[d]amages do not include . . . [t]he restitution of consideration or expense paid to you for professional services rendered or which should have been rendered[.]" *Id.* at 72. In addition, the Combined Policy Exclusions incorporate a "Professional Liability Exclusion" that states:

> Professional liability, malpractice, errors, omissions, or acts of any type including rendering or failure to render any type of professional service is not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, unless such coverage is specifically endorsed onto this policy.

*Id.*

A "Physical Abuse or Sexual Misconduct Limits of Liability Endorsement" (the "PASMLL Endorsement") establishes a $1,000,000 per-claim limit and a $3,000,000 aggregate limit on James River's liability for damages arising out of:

> (1) Physical abuse or sexual misconduct, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of . . . any insured, any person, or any causes whatsoever;
>
> (2) The failure by . . . any insured or any person to suppress or prevent physical abuse or sexual misconduct;

4

(3) The failure to provide an environment safe from physical abuse or sexual misconduct, including but not limited to the failure to provide adequate security, or the failure to warn of the dangers of the environment which could contribute to physical abuse or sexual misconduct;

(4) The negligent employment, investigation, hiring, supervision, training, or retention of any person; or

(5) The use of any force to protect persons or property whether or not the injury was intended from the standpoint of the insured or committed by or at the direction of the insured.

*Id.* at 58. Pursuant to the PASMLL Endorsement, "[p]hysical abuse or sexual misconduct may include, but are not limited to, assault, . . . intimidation, . . . verbal abuse, and any threatened harmful or offensive contact between two or more persons[.]" (Doc. 1-1 at 58.) The PASMLL Endorsement applies to both the Policy's CGL and professional liability coverage.

## II. Whether There Are Material Facts In Dispute.

Although James River cites the Estate's expert in the Underlying Suit as uncontested evidence of Defendants' alleged negligence, Defendants dispute that characterization and cite their own expert witness opinion regarding whether Inn-One breached the applicable standard of care. Competing expert opinions do not create a disputed issue of fact where the coverage determination does not turn on those opinions but instead depends on the facts alleged in the Underlying Suit. At summary judgment, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" are material to the court's determination. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Defendants also do not create a material issue of fact by challenging certain citations of the Policy as incomplete or by urging the court to interpret the Policy as a whole. (*See, e.g.*, Doc. 45-1 at 3-4, 6, 8 ¶¶ 7-8, 11, 18.) "[I]nterpretation of an insurance policy, like other contracts, is a question of law." *Co-operative Ins. Cos. v. Woodward*, 2012 VT 22, ¶ 8, 191 Vt. 348, 352, 45 A.3d 89, 92; *see also B & C Mgmt. Vt., Inc. v. John*, 2015 VT 61, ¶ 11, 199 Vt. 202, 207, 122 A.3d 511, 514 ("Here, there is no dispute

as to the facts; the parties dispute the proper interpretation of their contract, which is a question of law."). Correspondingly, competing arguments regarding how the court interprets the Policy are also not contested issues of fact.

Although Defendants assert that the factual basis for the Estate's breach of contract and negligence claims is "virtually identical" to the allegations in support of the statutory consumer protection claim, (Doc. 45-1 at 9-10, ¶ 21), this observation, if credited, does not create a disputed issue of fact. *See Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted.").

In light of the foregoing, James River has satisfied its burden as the moving party to "show[] that there is no genuine dispute as to any material fact[.]" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (alteration in original) (quoting Fed. R. Civ. P. 56(a)).

### III. Conclusions of Law and Analysis.

#### A. Standard of Review.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The function of the district court in considering [a] motion for summary judgment is not to resolve disputed questions of fact" identified by the parties, but simply to "determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39-40 (2d Cir. 2015) (quoting *Anderson*, 477 U.S. at 248).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). When the moving party has carried its burden, its opponent must produce

6

"sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. However, [a] non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted). In evaluating the presence of genuine factual disputes, the court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his favor." *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

### B. Whether There is CGL Coverage for the Claims in the Underlying Suit.

#### 1. Whether There is CGL Coverage for Allegations of Improper Chemical Restraint.

James River asserts that it has no duty to defend or indemnify Defendants for claims based on the alleged improper chemical restraint of Ms. Kelly under the Policy's CGL coverage because, pursuant to the Healthcare Providers Exclusion, the CGL coverage excludes "'bodily injury' . . . arising out of . . . [t]he furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances[.]" (Doc. 1-1 at 63.) Defendants agree that "the [Healthcare Providers Exclusion] precludes coverage under the Policy's [CGL] coverage part for the alleged 'chemical restraint' by improper administration of medications." (Doc. 45 at 2 n.2.) The court therefore GRANTS summary judgment to James River on this issue and declares that because the Policy provides no CGL coverage for claims arising from Inn-One's alleged chemical restraint of Ms. Kelly, there is also no duty to defend those claims.

#### 2. Whether Ms. Flagg's Alleged Assault "Arose Out of" the Rendering of a Health Service.

James River contends that it is not required to defend or indemnify Defendants for any other claims in the Underlying Suit pursuant to the Policy's CGL coverage because

7

Ms. Flagg was employed as a caregiver and the Healthcare Providers Exclusion excludes coverage for her assault of Ms. Kelly, which took place in the course of providing health care services. Defendants counter that the Healthcare Providers Exclusion is inapplicable to the Underlying Suit's claims of negligence and negligent hiring, supervision, training, and retention of Ms. Flagg because those claims are not solely premised on Ms. Flagg's abusive conduct and Ms. Flagg is not a named defendant in the Underlying Suit.

"An insurer's duty to defend . . . is broader than its duty to indemnify." *Garneau v. Curtis & Bedell, Inc.*, 610 A.2d 132, 134 (Vt. 1992). The duty to defend applies "whenever it is clear that the claim against the insured might be of the type covered by the policy[,]" *id.*, whereas "[t]he duty to indemnify arises when there is a loss or injury that falls within the coverage provisions and is not removed from coverage by an exclusion." *Cincinnati Specialty Underwriters Ins. Co. v. Energy Wise Homes, Inc.*, 2015 VT 52, ¶ 33, 199 Vt. 104, 116, 120 A.3d 1160, 1169 (Morris, Supr. J., dissenting) (citing *Woodward*, 2012 VT 22 at ¶ 11, 191 Vt. at 348, 45 A.3d at 89). If there is no duty to indemnify, there is no duty to defend. *See Garneau*, 610 A.2d at 134 (noting duty to defend does not apply "if there is no possible factual or legal basis on which [insurer] might eventually be obligated to indemnify") (internal quotation marks and citation omitted).

In analyzing an insurer's duty to the insured, the "court must focus on the factual allegations of the underlying complaint, and not on the legal theories asserted." *Murphy v. Acceptance Indem. Ins. Co.*, 788 F. Supp. 2d 332, 335 (D. Vt. 2011) (internal quotation marks and citation omitted); *TBH ex rel. Howard v. Meyer*, 716 A.2d 31, 34 (Vt. 1998) ("We must focus on the factual allegations in [the] complaint and not on the legal theories asserted, and unless the complaint alleges facts within the coverage of the policies, [the insurer] has no duty to defend or indemnify.").

Under Vermont law, "[t]he proper construction of language in an insurance contract is a question of law[.]" *Trinder v. Conn. Attorneys Title Ins. Co.*, 2011 VT 46, ¶ 11, 189 Vt. 492, 496, 22 A.3d 493, 496 (citation omitted). "An insurance policy is construed according to its terms and the evident intent of the parties as expressed in the

8

policy language." *Rainforest Chocolate, LLC v. Sentinel Ins. Co., Ltd.*, 2018 VT 140, ¶ 6, 204 A.3d 1109, 1111 (internal quotation marks and citation omitted). Courts must "review the language of an insurance contract from the perspective of what a reasonably prudent person applying for insurance would have understood it to mean." *Woodward*, 2012 VT 22 at ¶ 9, 191 Vt. at 352-53, 45 A.3d at 93 (internal quotation marks and citation omitted).

Where an insurance policy's terms "can be reasonably or fairly susceptible of different constructions[,]" those terms are ambiguous. *Chamberlain v. Metro. Prop. & Cas. Ins. Co.*, 756 A.2d 1246, 1248 (Vt. 2000) (internal quotation marks and citation omitted). "[T]he determination of ambiguity is a question of law," and "[a]ny ambiguities in insurance policies are construed in favor of finding coverage." *DeBartolo v. Underwriters at Lloyd's of London*, 2007 VT 31, ¶ 9, 181 Vt. 609, 611, 925 A.2d 1018, 1022 (citation omitted). "However, the fact that a dispute has arisen as to proper interpretation does not automatically render the language ambiguous[,]" and courts "will not deprive the insurer of unambiguous terms placed in the contract for its benefit." *Rainforest Chocolate, LLC*, 2018 VT 140 at ¶ 7, 2014 A.3d at 1111 (internal quotation marks and citations omitted).

The CGL part of the Policy provides coverage for "'bodily injury' . . . to which this insurance applies[,]" (Doc. 41-1 at 2, ¶ 7), subject to the Healthcare Providers Exclusion stating that "this insurance does not apply to 'bodily injury' . . . arising out of . . . [t]he rendering or failure to render . . . [a]ny health or therapeutic service, treatment, advice or instruction[.]" (Doc. 1-1 at 63.) In the context of an insurance policy, the "phrase 'arising out of' is very broad and comprehensive, requiring only that there be some causal relationship between [an] injury and [the] risk for which coverage is provided[]." *State Farm Mut. Auto. Ins. Co. v. Roberts*, 697 A.2d 667, 672 (Vt. 1997) (citation omitted). There must be "only . . . *some* causal relationship between the injury" and the specified risk. *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 568 (2d Cir. 2011) (emphasis in original) (applying New York law); *see also United Nat. Ins. Co. v. Penuche's, Inc.*, 128 F.3d 28, 31 (1st Cir. 1997) (observing that "[u]nder New

9

Hampshire law, 'arising out of' is a very broad term meaning originating from or growing out of or flowing from") (second internal quotation marks and citation omitted); *Koscinski v. Farm Family Cas. Ins. Co.*, 346 F. Supp. 3d 248, 254 (D. Conn. 2018) (noting that under Connecticut law, "it is sufficient to show only that the accident or injury was connected with, had its origins in, grew out of, flowed from, or was incident to [an] occurrence").[2]

In the Underlying Suit, Ms. Flagg is alleged to have been a caregiver at Inn-One's facility when she allegedly verbally abused and physically assaulted Ms. Kelly. The assault allegedly occurred while Ms. Flagg was on Inn-One's premises, during work hours, in the course of her professional care of Ms. Kelly. No other relationship between Ms. Flagg and Ms. Kelly is alleged. The fact that Ms. Flagg is not named as a defendant or that the Estate pursues theories of negligent hiring, training, retention, and supervision is not dispositive. Instead, "focus[ing] on the factual allegations in [the Underlying Suit] and not on the legal theories asserted," *TBH ex rel. Howard*, 716 A.2d at 34, Ms. Flagg's assault of Ms. Kelly "arose out of" "[t]he rendering or failure to render . . . [a]ny health or therapeutic service[.]" (Doc. 1-1 at 63.) The Healthcare Providers Exclusion thus applies and excludes coverage under the CGL part of the Policy.

### 3. The Interplay Between the Healthcare Providers Exclusion and the PASMLL Endorsement.

Both the Policy's CGL and professional liability coverage are subject to the PASMLL Endorsement that establishes the maximum amount James River will pay for claims arising out of "[p]hysical abuse or sexual misconduct, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of [Inn-One], any insured, any person, or any causes whatsoever[.]" (Doc. 1-1 at 58.)

---

[2] *See also St. Paul Fire & Marine Ins. Co. v. Asbury*, 720 P.2d 540, 542 (Ariz. Ct. App. 1986) (finding physician's "tortious conduct committed while providing professional services" arose out of provision of services and was covered by insurance policy); *Vigilant Ins. Co. v. Kambly*, 319 N.W.2d 382, 384-85 (Mich. Ct. App. 1982) (finding conduct of physician who induced patient to engage in sexual activity as part of "prescribed therapy" fell within coverage for "injury arising out of the rendering of or failure to render professional services").

Defendants contend that PASMLL Endorsement shows "James River contemplates instances under both the [CGL] and professional services liability coverages where a claimant is injured by physical abuse or sexual misconduct[,]" rendering the Policy ambiguous because "coverage for this selfsame conduct would be excluded" by the Healthcare Providers Exclusion. (Doc. 45 at 6.) They urge the court to find that, notwithstanding its plain language to the contrary, the Healthcare Providers Exclusion eliminates all coverage for physical abuse or sexual misconduct under both parts of the Policy, rendering coverage illusory and any limitations on coverage inapplicable. This strained policy interpretation would require the court to ignore the plain and unambiguous language of the Policy.

"Words or phrases in an insurance policy are ambiguous if they are fairly susceptible to more than one reasonable interpretation." *Rainforest Chocolate, LLC*, 2018 VT 140 at ¶ 7, 209 Vt. at 235, 204 A.3d at 1111. Defendants argue that it is nonsensical for the Policy to include limits on CGL coverage for physical abuse or sexual misconduct if those same acts are excluded from CGL coverage by the Healthcare Providers Exclusion. However, not all claims of physical or sexual misconduct arise out of the provision of health care services. Such claims may arise from an interaction between two patients at the facility, between a visitor to the facility and a patient, or between co-workers. In such circumstances, because none of the alleged physical or sexual misconduct "arises out of" the provision of health services, the Healthcare Providers Exclusion would not apply but the PASMLL Endorsement would. The Healthcare Providers Exclusion and the PASMLL Endorsement therefore may be harmonized and are not ambiguously duplicative. *See Constr. Drilling, Inc. v. Eng'rs Constr., Inc.*, 2020 VT 38, ¶ 14, --- A.3d ---- (noting that an "agreement must be viewed in its entirety, with an eye toward giving effect to all material parts in order to form a harmonious whole") (internal quotation marks and citation omitted).

By its terms, the Policy's PASMLL Endorsement applies to both the CGL and professional liability coverage. (Doc. 1-1 at 58) ("This endorsement modifies insurance provided under the following: Commercial General Liability Coverage[;] Professional

11

Liability Coverage"). It caps James River's liability for claims "arising out of, resulting from, or in connection with" physical abuse or sexual misconduct "whether or not caused or committed by . . . any insured [or] any person" at $1,000,000 per claim and $3,000,000 in the aggregate. *Id.* Defendants' proposed interpretation of the Healthcare Providers Exclusion conflicts with the Policy's plain and unambiguous language and therefore must be rejected. *See Vt. Mut. Ins. Co. v. Parsons Hill P'ship*, 2010 VT 44, ¶ 21, 188 Vt. 80, 90, 1 A.3d 1016, 1023 (holding that "[w]hen interpreting an insurance contract," the court relies "principally on the plain, ordinary, and popular meaning of" its terms); *Downtown Barre Dev. v. C & S Wholesale Grocers, Inc.*, 2004 VT 47, ¶ 14, 177 Vt. 70, 78, 857 A.2d 263, 269 ("No court may rewrite unambiguous contractual terms to grant one party a better bargain than the one it made.") (internal alterations and citation omitted). Because the court "assume[s] that parties included contract provisions for a reason, [it] . . . will not embrace a construction of a contract that would render a provision meaningless." *Rounds v. Malletts Bay Club, Inc.*, 2016 VT 102, ¶ 16, 203 Vt. 473, 479, 157 A.3d 1101, 1106 (internal quotation marks and citation omitted).

In summary, Ms. Flagg's assault of Ms. Kelly "ar[ose] out of . . . the rendering [of] . . . [a]ny health or therapeutic service[,]" (Doc. 1-1 at 63), and the claims in the Underlying Suit are excluded from the Policy's CGL coverage pursuant to the Healthcare Providers Exclusion. They are also subject to the PASMLL Endorsement because they involve "[p]hysical abuse . . . whether or not caused or committed by or at the instructions of, or at the direction of or negligence of . . . any insured, any person, or any causes whatsoever" including "[t]he failure by . . . any insured or any person to . . . prevent physical abuse" and the "negligent employment, investigation, hiring, supervision, training, or retention of any person[.]" (Doc. 1-1 at 58.)

For the foregoing reasons, James River's motion for partial summary judgment that it has no duty to defend or indemnify Defendants under the Policy's CGL coverage is GRANTED.

## C. Whether Restitution Damages in the Underlying Suit are Excluded From Coverage Under the Policy.

In the Underlying Suit, the Estate claims it is "entitled to recover the $51,250.00 that [Ms. Kelly] paid to [Inn-One] for the benefits it promised but failed to provide, three times that amount as exemplary damages, and their attorney's fees" pursuant to the Vermont Consumer Protection Act. (Doc. 41-1 at 5, ¶ 21.) James River seeks a declaration that it is not liable for any cost of care expenses under any portion of the Policy because restitution payments are excluded from coverage. The Combined Policy Exclusions state that, for both the CGL and professional liability coverage, "[d]amages do not include . . . [t]he restitution of consideration or expense paid to you for professional services rendered or which should have been rendered[.]" (Doc. 1-1 at 72.)

In a separate provision, the Combined Policy Exclusions exclude coverage for "rendering or failure to render any type of professional service . . . unless such coverage is specifically endorsed onto this policy." *Id.* Defendants argue that because professional liability coverage is "added to the Policy as a coverage part and not as an endorsement[,]" (Doc. 45 at 7) (emphasis omitted), the Combined Policy Exclusions void the Policy's professional liability coverage in its entirety, rendering the coverage conferred by the Policy illusory.

James River's response bears quoting at length:

> The Policy's professional liability coverage provided coverage for "those sums the insured becomes legally obligated to pay as 'damages' because of 'professional services' rendered or that should have been rendered to which this insurance applies." "Professional services" is defined, for the purposes of the Policy's professional liability coverage, as "the furnishing of professional health care services by the Named Insured shown in the Declarations." This definition limits the Policy's professional liability coverage to the particular type of professional services that [Inn-One] provides: health care services. When read in conjunction with the Professional Liability Exclusion, the scope of the Policy's coverage is clear: it provides professional liability coverage for [Inn-One's] health care services, but not for other professional services that [Inn-One] could provide, such as accounting or engineering. *See* 10 Couch on Ins. § 139:32 (noting that "exclusion and limitation clauses act to eliminate from

13

> coverage certain specified losses which would, or might, otherwise be covered by the policy").
>
> James River has never suggested that the Policy's professional liability coverage is void. It has simply emphasized that the claims against Inn-One [] in the Underlying Complaint, if covered under the Policy, would fall within its professional liability coverage, not its general liability coverage.

(Doc. 47 at 5-6) (internal citations to Statement of Undisputed Material Facts omitted).

"Insurance policies and their endorsements must be read together as one document and the words of the policy remain in full force and effect except as altered by the words of the endorsement." *Fireman's Fund Ins. Co. v. CNA Ins. Co.*, 2004 VT 93, ¶ 20, 177 Vt. 215, 224, 862 A.2d 251, 258-59 (internal quotation marks and citation omitted). The Vermont Supreme Court has cautioned against "[s]trained or forced constructions" of insurance contracts, *Town of Troy v. Am. Fid. Co.*, 143 A.2d 469, 474 (Vt. 1958), and "[i]t is axiomatic that constructions of exclusionary clauses to nullify coverage provisions are not reasonable." *Pharmacists Mut. Ins. Co. v. Myer*, 2010 VT 10, ¶ 10, 187 Vt. 323, 330, 993 A.2d 413, 418. Defendants' proposed interpretation of the Combined Policy Exclusions as eliminating the Policy's professional liability coverage completely is neither reasonable, nor reflects the parties' intent.

The Vermont Consumer Protection Act permits a prevailing plaintiff to recover "the amount of his or her damages, *or the consideration or the value of the consideration given by the consumer*, reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by the consumer." 9 V.S.A. § 2461(b) (emphasis supplied). Interpreting the Policy "according to its terms[,]" *Rainforest Chocolate, LLC*, 2018 VT 140 at ¶ 6, 204 A.3d at 1111, the Policy excludes coverage for any amounts paid for Ms. Kelly's care. It does not, however, foreclose coverage for other types of damages under the Vermont Consumer Protection Act. Defendants further assert that even if the exclusion of restitution damages is enforceable, it would not apply to compensatory damages awarded for the Estate's negligence or breach of contract claims. The court agrees.

James River seeks only a declaration that it is not liable for restitution of "expenses paid for [Ms. Kelly's] care" by Inn-One. (Doc. 41 at 1.) Because the Policy is unambiguous and excludes coverage for "[t]he restitution of consideration or expense paid to [Inn-One] for professional services rendered or which should have been rendered[,] (Doc. 1-1 at 72), James River's motion for partial summary judgment that it is not liable for restitution of expenses paid to Inn-One for Ms. Kelly's care must be GRANTED.

## CONCLUSION

For the foregoing reasons, James River's motion for partial summary judgment is GRANTED. (Doc. 41.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 22nd day of June, 2020.

Christina Reiss, District Judge
United States District Court

15