UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 JUN -8 PM 12: 40

CLERK

BY      LW
    DEPUTY CLERK

| | |
|---|---|
| JAMES RIVER INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| INN-ONE HOME, LLC D/B/A OUR HOUSE ) | Case No. 18-cv-00100 |
| RESIDENTIAL CARE HOMES, PAULA ) | |
| PATORTI, LISA PATORTI, and JUNE F. ) | |
| KELLY, as Executor of the Estate of Marilyn ) | |
| F. Kelly, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER GRANTING JAMES RIVER INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT**
(Doc. 54)

Plaintiff James River Insurance Company ("James River") brings this suit against Defendants Inn-One Home, LLC ("Inn-One"), Paula Patorti, and Lisa Patorti, (collectively "Defendants") seeking a declaratory judgment that it has no duty to defend or indemnify Defendants in an underlying state court civil suit (the "Underlying Suit") based on the alleged neglect, assault, and mistreatment of the late Marilyn F. Kelly ("M. Kelly") at a residential care facility operated by Inn-One.

On June 22, 2020, the court granted James River's motion for partial summary judgment, declaring that James River had no duty to defend or indemnify Defendants in the Underlying Suit pursuant to the commercial general liability ("CGL") coverage set forth in Policy Number 00076613-0 (the "Policy"). On September 23, 2020, James River moved for summary judgment seeking a declaration that it also has no duty to defend or indemnify Defendants under the Policy's professional liability coverage provisions. On November 12, 2020, Inn-One opposed the motion and on November 18, 2020, James

River replied. On May 18, 2021, Defendants submitted supplemental authority and a hearing was held, at which time the court took the pending motion under advisement.

James River is represented by Gary M. Burt, Esq. Defendants Inn-One, Paula Patorti, and Lisa Patorti are represented by Joshua L. Simonds, Esq. Defendant June Kelly ("J. Kelly"), as executor of the Estate of M. Kelly (the "Estate"), is represented by Daniel L. Burchard, Esq.

I.     **The Undisputed Facts.**

   A.     **Events Giving Rise to the Claims in the Underlying Suit.**

In May 2015, M. Kelly was admitted to a residential care facility located at 69 Allen Street in Rutland, Vermont operated by Inn-One for residential care related to dementia. While at Inn-One's facility, M. Kelly was allegedly medicated with the anti-psychotic drug haloperidol without the consent of her legal guardian. On August 3, 2015, she fell in her room at Inn-One's facility. On September 4, 2015, she eloped from the facility, was missing overnight, and located the following day. M. Kelly's elopement was reported to the Vermont Department of Disabilities, Aging, and Independent Living ("DAIL") on September 10, 2015. J. Kelly, M. Kelly's daughter, threatened to sue the pharmacy whose employee had held the door open for M. Kelly, allowing her to elope.

On September 17, 2015, M. Kelly was taken to the emergency room after another fall at Inn-One's facility. On November 26, 2015, she again was taken to the hospital after Inn-One staff noticed a bump and laceration on her forehead and bruising and blood in her hair. On December 15, 2015, M. Kelly went to the emergency room via ambulance after she fell in her room at Inn-One's facility and was found with blood "streaming down her face." (Doc. 54-1 at 5, ¶ 26.)

On December 31, 2015, Marissa Flagg, an Inn-One caregiver, verbally assaulted and intentionally pushed M. Kelly, causing her to fall and suffer injuries (the "Flagg Assault"). Ms. Flagg was later terminated by Inn-One and criminally prosecuted for

assaulting M. Kelly.[1] When asked at his deposition whether a patient being assaulted and taken to the hospital for treatment as a consequence "could be an incident that could give rise to a claim[,]" Inn-One's insurance agent, Charles Rose, responded in the affirmative. (Doc. 54-12 at 14.)

Throughout M. Kelly's residence at Inn-One's facility, J. Kelly, Defendant Paula Patorti, and other Inn-One staff held Care Plan Conferences at which J. Kelly expressed concerns regarding her mother's meals, medications, and activity level. According to Defendant Paula Patorti, Inn-One's staff was "always frustrated with [J. Kelly]." (Doc. 54-3 at 27.) At a care conference shortly after the Flagg Assault, J. Kelly told Defendant Paula Patorti that she had been "questioning staff about events, [Flagg's] history etc." and was "'forming a union' with other families regarding – menus, meal prep, [c]aregiver Marissa [Flagg] etc." (Doc. 54-13 at 2.) J. Kelly testified at her deposition that, during this same conference, Defendant Paula Patorti told her that certain Inn-One staff had raised concerns about J. Kelly filing professional conduct complaints against them with respect to their care of M. Kelly.

On January 15, 2016, M. Kelly was hospitalized. She died of bronchopneumonia on February 1, 2016. On March 1, 2016, J. Kelly requested copies of her mother's records related to her stay at Inn-One's facility.

On December 11, 2017, the Estate and M. Kelly's children[2] filed the Underlying Suit against Inn-One in Rutland Superior Court, asserting claims of negligence, breach of contract, wrongful death, negligent hiring, and violation of Vermont's Consumer Protection Act arising out of Inn-One's alleged negligent care and supervision and chemical restraint of M. Kelly and the Flagg Assault, which they contend contributed to M. Kelly's death.

---

[1] Inn-One alleges that it "played an active role in reporting the [Flagg Assault] to authorities and seeing Marissa Flagg criminally prosecuted and placed on the Elderly Abuse Registry." (Doc. 62 at 3.)

[2] M. Kelly's children were later dismissed from the Underlying Suit in their individual capacities, leaving the Estate as the sole plaintiff.

3

**B.    The James River Insurance Policy.**

In February 2017, Inn-One submitted an application for insurance to James River (the "Application") which included a section titled "Important Notice" that stated:

> [a]ll known claims and/or incidents that could reasonably result in a claim are specifically excluded from coverage. Report all such claims or incidents to your current insurer. Your failure to disclose any claim, or incident that could reasonably result in a claim, may result in the proposed insurance being void and/or subject to rescission.

(Doc. 54-2 at 3.) Defendant Paula Patorti signed the application on behalf of Inn-One. On the signature page of the Application, a Warranty Statement provided that "[t]he undersigned authorized officer of the Applicant declares that the statements set forth herein are the result of said officer's inquiry and, as such, are true, accurate and complete." *Id.* at 6.

Question 1.b. in the Claims Activity and Incident Reporting Procedures section of the Application asked for information regarding any incidents involving abuse, improper contact, or that generated a formal complaint or notice from any federal or state regulatory body. Question 1. b. specifically sought the following information:

> Incident Activity – Please outline the details below regarding any of the following incidents that have taken place at any of your facilities for which coverage is being requested, but where such incidents have not been reported to any insurer:
>
> Death of a client, patient or resident from other than natural causes;
>
> Injury to a client, patient or resident that required hospitalization;
>
> Incident involving abuse, molestation, sexual assault, rape or improper contact;
>
> Incident that generated a formal complaint or notice from any federal or state regulatory body;
>
> Injury resulting from an elopement or unauthorized absence of a client, patient or resident;
>
> Improper medication or improper dosage resulting in hospitalization; or
>
> Decubitus ulcer(s) first acquired under your care that have reached Stage IV.

4

*Id.* at 3. Inn-One responded "2" to the "[i]njury to client, patient or resident that required hospitalization" sub-question and "0" to all remaining sub-questions of Question 1.b. *Id.* In the space provided under Question 1.b., Inn-One wrote "Fall/result Fracture Hip[.]" *Id.* Question 1.b.1 asked "[a]re there any other known incidents that could reasonably be expected to result in a claim against the Applicant?" to which Inn-One responded by checking the "No" box. *Id.* Other than noting the two incidents, described as "Fall/result Fracture Hip[,]" no other incidents were disclosed in the Application. *Id.*

James River issued the Policy which provides CGL and professional liability insurance coverage to Inn-One for the period from March 28, 2017 through March 27, 2018. It was the first insurance policy that James River issued to Inn-One.

The Policy's professional liability coverage is a claims-made-and-reported policy that applies only to claims made against Inn-One during the policy period and any extended reporting period. *See* Doc. 54-15 at 3 (stating that "[t]his policy is on a claims-made and reported basis which provides liability coverage only if a claim is first made and reported during the policy period or any applicable extended reporting period"). It provides that James River will pay "those sums the insured becomes legally obligated to pay as 'damages' because of 'professional services' rendered or that should have been rendered to which this insurance applies." (Doc. 54-15 at 29.) "Professional services" are defined as "professional health care services[.]" *Id.* at 34. The Policy's professional liability coverage does not cover any "claim":

    a.    Based on or directly or indirectly arising out of or resulting from:

        (1)    A "professional service" rendered prior to the effective date of the first Policy period in a series of uninterrupted renewal policies by us, *if any insured knew or could have reasonably foreseen that the "professional service" could give rise to a "claim"*;

        (2)    Any common fact, circumstances, transaction advice or decision involved in a "professional service" *reported as a "claim" or potential "claim" under any prior Policy*; or

        (3)    Any "claim", "suit", act, error, or omission disclosed in the application for this Policy;

5

*Id.* at 30 (emphasis supplied).

It is undisputed that the Flagg Assault was not disclosed in the Application for the Policy. The only issues are whether Inn-One knew or could have reasonably foreseen that the Flagg Assault could give rise to a claim and whether Inn-One reported the Flagg Assault under any prior policy.

### C. The Colony Action.

In *Inn-One Home, LLC d/b/a Our House Residential Care Homes v. Colony Specialty Insurance Company, et al.*, C.A. No. 2:19-cv-00141-cr (the "Colony action"), Inn-One sought coverage under its March 28, 2016 to March 28, 2017 policy with Colony, Inn-One's insurer prior to James River's issuance of the Policy, for the claims arising out of the Underlying Complaint. In the Colony action, Inn-One asserted that "Colony received notice of the incident involving Marissa Flagg and M[.] Kelly through its receipt of the [DAIL] Survey" and that "Colony also received notice of incidents relating to the administration and management of medication for residents through its receipt of the [DAIL] Survey." (Doc. 54-17 at 5-6, ¶¶ 18-19.) Inn-One further alleged that "[b]ased on receipt of the [DAIL] Survey, the claims made Colony Policy was triggered[,]" *Id.* at 6, ¶ 20, because "[t]he DAIL [Survey] including its description of the Flagg [Assault] was appropriately reported to Colony on or around April 7, 2016 . . . when the Colony Policy was still in effect." (Doc. 54-19 at 11.)

On February 23, 2021, this court issued an Opinion and Order in the Colony action granting Colony's motion for summary judgment and denying Inn-One's cross-motion for partial summary judgment. The court held that "[a]lthough the DAIL Report provided some information related to the potential for a claim, it did not satisfy Inn-One's burden to actually report an occurrence, offense, or incident[.]" *Inn-One Home, LLC v. Colony Specialty Ins. Co.*, 2021 WL 694828, at *8 (D. Vt. Feb. 23, 2021). The court further found that "[b]ecause Inn-One failed to provide notice of an occurrence within the relevant policy period and failed to report incidents that it knew could give rise to a claim prior to the commencement of Policy Period 2, it is not entitled to a defense or indemnification from Colony in the Underlying Suit." *Id.* at *10.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that "'might affect the outcome of the suit under the governing law[,]'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), while "[a] dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). On a motion for summary judgment, the court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his favor." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In adjudicating a motion for summary judgment, the district court's role "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

**B.      Whether Inn-One Knew or Could Have Reasonably Foreseen That Its Professional Services Could Give Rise to a Claim.**

James River asserts that Inn-One is not entitled to a defense or indemnification in the Underlying Suit pursuant to the Policy's prior knowledge exclusion because it knew or should have reasonably foreseen that the Flagg Assault could give rise to a claim. "An insurer's duty to defend . . . is broader than its duty to indemnify[.]" *Garneau v. Curtis & Bedell, Inc.*, 610 A.2d 132, 134 (Vt. 1992). The duty to defend applies "whenever it is clear that the claim against the insured might be of the type covered by the policy[,]" *id.*, whereas the duty to indemnify arises only when there is a covered loss or injury. *See Coop. Ins. Cos. v. Woodward*, 2012 VT 22, ¶ 11, 191 Vt. 348, 353, 45 A.3d 89, 93 (holding that "[i]f a claim is made or suit is brought against an insured for damages because of bodily injury that is caused by an occurrence, there is coverage under the policy, unless an exclusion applies.") (internal quotation marks and citation omitted). If there is no duty to indemnify as a matter of law, there is no duty to defend because "there is no possible factual or legal basis on which [the insurer] might eventually be obligated to indemnify." *Garneau*, 610 A.2d at 134 (internal quotation marks and citation omitted).

"'Claims-made' policies generally restrict coverage to claims made during the policy period 'without regard to the timing of the damage or injury.' 'Occurrence based' policies, on the other hand, provide coverage only for injury or property damage 'which occurs during the policy period.'" *Bradford Oil Co. v. Stonington Ins. Co.*, 2011 VT 108, ¶ 7, 190 Vt. 330, 335, 54 A.3d 983, 987 (quoting *Towns v. N. Sec. Ins. Co.*, 2008 VT 98, ¶¶ 28-29, 184 Vt. 322, 341-42, 964 A.2d 1150, 1163-64); *see also Inn-One Home, LLC v. Colony Specialty Ins. Co.*, 2021 WL 694828, at *5 (D. Vt. Feb. 23, 2021). A claims-made policy is a "cheaper . . . form of coverage specifically designed to limit the insurer's risk by restricting coverage to claims made during the policy period[.]" *Towns*, 2008 VT 98 at ¶ 29, 184 Vt. at 342, 964 A.2d at 1164 (citation and emphasis omitted). Accordingly, "[d]uring the period the claims-made policy [is] in effect, . . . [the insurer is] obligated to cover a claim only if damages were caused by a[n] . . . incident that occurred during the claims-made policy period *and* if the claim was reported to the company while the

claims-made policy [is] in effect." *McAlister v. Vt. Prop. & Cas. Ins. Guar. Ass'n*, 2006 VT 85, ¶ 13, 180 Vt. 203, 209, 908 A.2d 455, 460 (emphasis in original).

Under Vermont law, "[t]he proper construction of language in an insurance contract is a question of law[.]" *Trinder v. Conn. Attorneys Title Ins. Co.*, 2011 VT 46, ¶ 11, 189 Vt. 492, 496, 22 A.3d 493, 496 (citation omitted). "An insurance policy is construed according to its terms and the evident intent of the parties as expressed in the policy language." *Rainforest Chocolate, LLC v. Sentinel Ins. Co., Ltd.*, 2018 VT 140, ¶ 6, 209 Vt. 232, 235, 204 A.3d 1109, 1111 (internal quotation marks and citation omitted). Courts must "review the language of an insurance contract from the perspective of what a reasonably prudent person applying for insurance would have understood it to mean." *Woodward*, 2012 VT 22 at ¶ 9, 191 Vt. at 352-53, 45 A.3d at 93 (internal quotation marks and citation omitted).

In this case, the Policy excludes professional liability coverage for any claim "arising out of or resulting from . . . [a] 'professional service' rendered prior to the effective date of the first Policy period . . . if any insured knew or could have reasonably foreseen that the 'professional service' could give rise to a 'claim[.]'" (Doc. 54-14 at 30.) "[P]rior-knowledge conditions" like the one contained in the Policy "are common in claims-made policies because they ensure that only risks of unknown loss are potentially incurred and prevent an insured from obtaining coverage for the risk of a known loss, which would be unfair to the insurer." *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1303 (10th Cir. 2011) (citations omitted); *see Colony*, 2021 WL 694828, at *8.

Courts apply a two-part test to determine if a prior knowledge condition precludes coverage, "asking first, whether the insured had actual knowledge of a suit, act, error or omission, a subjective inquiry; and second, whether a reasonable professional in the insured's position might expect a claim or suit to result, an objective inquiry." *Metro. Dist. Comm'n v. QBE Americas, Inc.*, 416 F. Supp. 3d 66, 72 (D. Conn. 2019) (emphasis omitted); *see also Cohen-Esrey Real Estate Servs., Inc.*, 636 F.3d at 1303-04 (applying two-part, subjective-objective analysis for applicability of prior knowledge condition);

*Fishman v. Hartford*, 980 F. Supp. 2d 672, 678 (E.D. Pa. 2013) (discussing the "mixed subjective/objective standard for determining what constitutes prior knowledge of a possible insurance claim"). Where "reasonable persons can draw but one inference" regarding "whether the insured has acted reasonably[,]" the objective inquiry may be resolved by the court as a question of law. *Capitol Specialty Ins. Corp. v. Sanford Wittels & Heisler, LLP*, 793 F. Supp. 2d 399, 411 (D.D.C. 2011) (citation omitted); *see also Colony*, 2021 WL 694828, at *9.

Although some of the incidents James River cites as giving rise to potential claims may be common in the care of elderly patients with dementia, even in the light most favorable to Inn-One, the Flagg Assault is not. Inn-One does not dispute that it had knowledge of the Flagg Assault through both its termination of Ms. Flagg and her criminal prosecution. The subjective part of the two-part test is therefore satisfied.

Inn-One asserts that it did not believe that the Flagg Assault was a potential claim,[3] however,"[i]t is not necessary that the [insured] have actually formed an expectation that a claim would be filed." *Am. Special Risk Mgmt. Corp. v. Cahow*, 192 P.3d 614, 629 (Kan. 2008). Instead, the second part of the test asks whether a reasonable insured would expect a claim or lawsuit to result. *See Cohen-Esrey Real Estate Servs., Inc.*, 636 F.3d at 1304 (finding that, where insured knew that its employee had defrauded the Department of Housing and Urban Development, had previously been caught engaging in theft and dishonesty, and had not been fired or subjected to stricter oversight, "[c]ertainly any insured could reasonably have foreseen that these facts might result in a [c]laim under this [p]olicy") (internal quotation marks, citation, and emphasis omitted); *Evanston Ins. Co. v. Hearthstone of Sun City, LLC*, 2010 WL 1416023, at *2 (D. Ariz. April 8, 2010) (holding that, where insured knew that a resident at its care facility had suffered "a potentially serious medical issue . . . prior to the inception of" its insurance

---

[3] In the Colony action, Inn-One contended that "[t]he DAIL [Survey] including its description of the Flagg [Assault] was appropriately reported to Colony" as a potential claim, (Doc. 54-19 at 11), but, in this case, it inconsistently argues that it "had no indication that the Flagg event was a potential claim" (Doc. 62 at 6.)

10

policy and his son had requested medical records, the insured "was thus aware of this potential error or omission that might result in liability").

Here, even in the light most favorable to Inn-One, Ms. Flagg's termination and criminal prosecution rendered it objectively reasonable for Inn-One to expect a claim or lawsuit to result. Stated differently, because Inn-One "played an active role in reporting the [Flagg Assault] to authorities and seeing Marissa Flagg criminally prosecuted and placed on the Elderly Abuse Registry[,]" it could reasonably have foreseen that this incident could give rise to a claim. (Doc. 62 at 3.) Indeed, no rational fact finder could reach a different conclusion. *See Colony*, 2021 WL 694828, at *9 (holding that, as a matter of law, "it was objectively reasonable for Inn-One to expect a claim or lawsuit to result" from the Flagg Assault and that "no rational fact finder could reach a different conclusion").

Inn-One nonetheless contends that because "[t]he gravamen and causal nexus of James River's argument is misrepresentation[,]" the affirmative defenses of inquiry notice, waiver, and 8 V.S.A. § 4205 preclude James River from enforcing the Policy's prior knowledge exclusion. (Doc. 62 at 11.)[4] With regard to notice, it argues that because James River was aware of the Flagg Assault and other information pertaining to M. Kelly's care prior to issuing the Policy, it "cannot now avail itself of the prior acts exclusion for a decision it regrets[.]" *Id.* at 15. However, James River's knowledge is irrelevant to the Policy's prior knowledge exclusion which only requires that the *insured* "knew or could have reasonably foreseen that the 'professional service' could give rise to a 'claim'[.]" (54-15 at 30.)

Inn-One fares no better with its contention that James River waived its rights under the prior knowledge exclusion by opting to issue the Policy without restrictive endorsements regarding the Flagg Assault. "[W]aiver is the intentional relinquishment of a known right and involves both knowledge and intent." *City of Burlington v. Hartford Steam Boiler Inspection & Ins. Co.*, 190 F. Supp. 2d 663, 685 (D. Vt. 2002). Under

---

[4] As James River points out, it does not seek summary judgment on its misrepresentation claim.

Vermont law, the party claiming a waiver carries the burden of establishing an "intention permanently to surrender the right in question" and, if the expression of intent is implied, that it was "unequivocal[.]" *Id.* at 680-81 (quoting *Dunbar v. Farnum*, 196 A. 237, 241 (Vt. 1938)). James River issued the Policy which unambiguously excludes coverage for certain claims; Inn-One points to nothing that waived that exclusion. James River did not need to restrict coverage for the Flagg Assault because its Policy does not cover it in the first instance. Because James River did not unequivocally express an intent to waive a Policy provision, Inn-One "had no basis for a reasonable, honest belief that [James River] intended to forego its right to deny coverage." *Anderson v. Coop. Ins. Cos.*, 2006 VT 1, ¶ 12, 179 Vt. 288, 292, 895 A.2d 155, 159. "In such circumstances, no waiver may be found." *Colony*, 2021 WL 694828, at *9 (holding that insurer did not "waive[] its rights under the prior-knowledge condition [of an insurance policy] by opting not to rescind or amend" the policy).

Finally, Inn-One's claim that 8 V.S.A. § 4205 works as an estoppel misunderstands the nature of James River's argument. 8 V.S.A. § 4205 provides that:

> [t]he falsity of a statement in the application for a policy covered by such provisions shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by insurer.

8 V.S.A. § 4205. In seeking summary judgment, James River has not sought to deny coverage based on alleged misrepresentations in the Application. Instead, it accepted the Application and provided coverage which is subject to a prior knowledge exclusion.

Because Inn-One's rendering of professional services to M. Kelly took place before the effective date of the Policy and because Inn-One knew or could have reasonably foreseen that the Flagg Assault could give rise to a claim, it is not entitled to a defense or indemnification from James River in the Underlying Suit. James River's motion for summary judgment is therefore GRANTED pursuant to the Policy's prior knowledge exclusion.

12

### C. Whether Professional Liability Coverage is Excluded Because Inn-One Reported the Claim or Potential Claim under a Prior Policy.

In the alternative, James River seeks a declaration that because Inn-One has asserted in its pleadings in the Colony action that it reported the Flagg Assault to Colony, the exclusion for professional liability coverage based on a "claim" or "potential claim" reported under a prior policy is triggered.

"Judicial estoppel prevents a party who secured a judgment in his favor by virtue of assuming a given position in a prior legal proceeding from assuming an inconsistent position in a later action." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997). It "may be applied to bar a party from asserting a factual position in a given proceeding only when that party advanced a clearly inconsistent position in a prior proceeding and that inconsistent position was adopted by the court in some manner[.]" *Id.* The Vermont Supreme Court has "not affirmatively adopted judicial estoppel." *In re Chittenden Solid Waste Dist.*, 2007 VT 28, ¶ 29, 182 Vt. 38, 51, 928 A.2d 1183, 1192 (citing *Gallipo v. City of Rutland*, 789 A.2d 942, 953 (2001)).

Because the court found Inn-One's notice of a claim insufficient in the Colony action, Inn-One's position was not "adopted by the court" and coverage cannot be excluded on this basis. *See id.* (declining to apply judicial estoppel and noting that "[t]he court in this case never acted on the [party's] earlier position"). The court therefore DENIES summary judgment and a declaratory judgment on James River's alternative ground.

### CONCLUSION

For the foregoing reasons, James River's motion for summary judgment (Doc. 54) is GRANTED, and the court hereby declares that James River has no duty to defend or indemnify Inn-One for any of the claims in the Underlying Suit pursuant to the Policy's prior knowledge exclusion.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 8th day of June, 2021.

Christina Reiss, District Judge
United States District Court

14